**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ROVIO ENTERTAINMENT, LTD., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  5:13-CV-1079-XR |
| | § | |
| GW TRADING LLC, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

**ORDER**

On this date the Court considered Plaintiff Rovio Entertainment, Ltd.'s Motion for Default Judgment (docket no. 187).  After careful consideration, the Court will GRANT the motion in part and DISMISS AS MOOT the motion in part.

**BACKGROUND**

Plaintiff Rovio Entertainment, Ltd. ("Rovio") filed this lawsuit on November 26, 2013, against thirty defendants.[1]  Docket no. 1.  Rovio is a Finnish media company and owns the Angry Birds franchise.  *Id.* at 10.  Angry Birds is a video game that was first released for download on Apple iOS in 2009.  *Id.*  Since then, the game and its various spinoffs have been downloaded over 250 billion times.  *Id.* at 11.  The popularity of the game subsequently led to an expansion of the Angry Birds franchise into merchandising, a cartoon series, and a film.  *Id.* at 12.

In connection with the Angry Birds franchise, Rovio obtained several federal trademark and copyright registrations.  *Id.* at 13.   Now, Rovio alleges that each of the thirty defendants

---

[1] As explained below, thirteen defendants have settled.  This order grants default judgment as to eight defendants. Nine other defendants have answered and the case against them remains pending.

have infringed upon these trademarks and copyrights by "copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products" that bear an Angry Birds trademark or copyrighted work. *Id.* at 14. The Complaint states federal copyright infringement; trademark counterfeiting under §§ 32, 34, and 35 of the Lanham Act; infringement of registered trademarks; and false designation of origin, passing off and unfair competition as causes of action.

## PROCEDURAL HISTORY

Rovio moved for entry of default against six defendants on April 11, 2014. *See* docket nos. 116–121. These defendants were Dial Tone Cellular, LLC, Rene Fidel Castro d/b/a JC, Inc., Jose Garcia, Macrina Luganas Orozco, Martin Z. Orozco, and Yazmin Reyes. The Clerk entered default as to those six defendants that same date. Docket no. 123. On June 4, 2014, Rovio moved for entry of default against GW Trading, LLC, GX Mart, LLC, Zhie Gao a/k/a Jimmy Gao, and Shun Gan Wang on June 4, 2014. Docket nos. 151–154. The clerk entered default as to those four defendants on June 5, 2014. Docket no. 155. At the time default was entered, none of those ten defendants had filed an answer or otherwise made an appearance.

At this point, the case lingered for well over a year while the parties engaged in informal settlement talks, Rovio and some of the defendants navigated discovery disputes, and several of the defendants cycled through attorneys. On January 27, 2016, Defendant Rene Fidel Castro d/b/a JC, Inc.—one of the defendants in default—filed an answer. Docket no. 186. Four days later, Rovio filed its Motion for Default Judgment against each of the ten defendants that had an entry of default filed by the Clerk. Docket no. 187. In the Motion for Default Judgment, Rovio asks for copyright statutory damages and trademark infringement and counterfeit statutory

damages, post-judgment interest, and a permanent injunction prohibiting the defendants in default from any further infringement of Rovio's intellectual property. *Id.* at 1.

Defendants Dial Tone, LLC (which is a business affiliated with Castro) and Rene Fidel Castro d/b/a JC, Inc., filed an answer (Castro's second at this point in time) on February 11, 2016.  Docket no. 187.  Castro and Dial Tone also filed a Response to Rovio's Motion for Default Judgment on February 23, 2016.  Docket no. 190.  None of the other defendants have filed an answer or any response to the motion.  Additionally, Dial Tone, LLC and Rene Fidel Castro d/b/a JC, Inc., recently participated in a mediation with Rovio before Magistrate Judge John W. Primomo and the parties reached a settlement of the claims.  Docket no. 199 at 2.  The other defaulting defendants were ordered to appear at the mediation but failed to do so.  *Id.* at 1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) states a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  "A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."  *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  In fact, "[f]ederal courts generally disfavor default judgments, preferring to resolve disputes according to their merits."  *Harper MacLeod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001) (citations omitted).  Default judgments are a "drastic remedy" and should only be resorted to by courts in "extreme situations."  *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989).

In determining whether to grant a default judgment, relevant factors include:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment,

> and whether the court would think itself obliged to set aside the
> default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Furthermore, default judgment is only appropriate when a plaintiff's allegations are sufficient to impose liability on a defendant. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam).  In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages.  The Court must accept pleaded facts as true, but it retains the obligation to determine whether those facts state a claim upon which relief may be granted.  *See id.* (upholding district court's denial of default judgment because, even if true, the plaintiff's allegations would not support imposing liability against the defendants); *see also Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).  A court may conduct a hearing to effectuate judgment, to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b). A hearing is not necessary, however, if the court finds within its discretion that it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## ANALYSIS

In its Motion for Default Judgment, Rovio has placed the ten defaulting defendants into the following groups: 1) GW Trading, LLC, GX Mart, LLC, Shun Gan Wang, and Zhie Gao a/k/a Jimmy Gao—referred to as the GW Defendants; 2) Dial Tone Cellular, LLC and Rene Fidel Castro d/b/a JC, Inc.—referred to as the Castro Defendants; 3) Macrina Lugunas Orozco and Martin Z. Orozco—referred to as the Orozco Defendants; 4) Jose Garcia; and 5) Yazmin Reyes.  *See* docket no. 187 at 1.

### I.      The GW Defendants

4

A. Jurisdiction

When a party is seeking entry of default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

*1. Personal Jurisdiction*

Both GW Trading, LLC, and GX Mart, LLC are Texas limited liability companies. Docket no. 1 at 3, 4.  As such, this Court has personal jurisdiction over both defendants.  Rovio states that it is unable to ascertain the true address of Shun Gan Wang, but that he is "an officer, director, principal, shareholder and/or owner" of GW Trading, LLC and his place of business is at 8419 Speedway Drive, San Antonio, Texas, 78230.  *Id.* at 3–4.  Similarly, Rovio states that it is unable to confirm the true address of Zhie Gao a/k/a Jimmy Gao, but that his last known address is 221 E. Broadway, Apartment 11, New York, New York, 10002 and that he is "an officer, director, principal, shareholder and/or owner" of both GW trading, LLC, and GX Mart, LLC.  *Id.* at 4.

Since the Court is unaware of Gao and Wang's true domicile, it will assume, arguendo, that they are nonresidents.  A federal court "may assert jurisdiction if (1) the state's long-arm statute applies . . . and (2) if due process is satisfied."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).  In the state of Texas, the long-arm statute authorizes the exercise of jurisdiction over a nonresident to the full extent compatible with federal mandates of due process.  *Id.* (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  Thus, personal jurisdiction is proper if two requirements are fulfilled.

"First, the nonresident defendant must have 'purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state.'" *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 323 (5th Cir. 1996) (quoting *Wilson*, 20 F.3d at 647). In order to establish "minimum contacts," it is sufficient to show that the defendant has contacts giving rise to either specific or general jurisdiction. *Id.* (quoting *Wilson*, 20 F.3d at 647). "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Wilson*, 20 F.3d at 647 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)). General jurisdiction is proper "even if the . . . contacts with the forum state are not directly related to the cause of action, [as long as] the defendant's contacts with the forum state are both 'continuous and systematic.'" *Id.* (citing *Helicopteros*, 466 U.S. at 414 n. 9).

Second, "the exercise of jurisdiction over the nonresident defendant must not 'offend traditional notions of fair play and substantial justice.'" *Felch*, 92 F.3d at 323 (quoting *Wilson*, 20 F.3d at 647). In making such a determination of "fairness," courts "consider (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution to controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Bullion*, 895 F.2d at 216 n. 5 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

In this case, it is clear that Gao and Wang have sufficient contacts with the state of Texas to establish either specific or general jurisdiction. Gao is both an officer and employee of GW Trading. Docket no. 187-3 at 3. He was present in the store, which is located in Texas, at the time the San Antonio Police Department and Homeland Security seized hundreds of products

6

related to this case and was responsible for providing infringing products to several other defendants in this case. *Id.* Wang is also an officer of GW Trading and was responsible for providing infringing products to other defendants and arranging their import into the United States. *Id.* Furthermore, exercise of jurisdiction over Gao and Wang would not "offend traditional notions of fair play and substantial justice." *See Felch*, 92 F.3d at 323 (quoting *Wilson*, 20 F.3d at 647). Thus, the Court has personal jurisdiction over these two defendants.

> *2. Subject Matter Jurisdiction*

Federal courts have subject matter jurisdiction over any civil action that involves a question of federal law or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332 (2012). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotation marks omitted). A case arises under federal law within the meaning of § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)). In this case, Rovio has asserted several federal causes of action, including trademark infringement in violation of the Lanham Act and violations of the Copyright Act of 1946. Docket no. 1 at 2. Therefore, this Court has subject matter jurisdiction over this case.

B. Liability

Next, the Court considers whether Rovio has stated a valid cause of action against the GW Defendants. When a defendant fails to respond, its default is considered an admission of the

plaintiff's well-pleaded allegations of fact related to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  While such allegations are presumed to be true, "a defendant's default does not in itself warrant the court in entering a default judgment.  [Rather, t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Put another way, a court must determine whether the well-pleaded facts state a claim upon which relief may be granted.  In sum, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action[,] and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

Due to the GW Defendants' failure to respond to the claims against them, the facts pled by Rovio are taken as true, but Rovio's Complaint must nonetheless contain substantive causes of action as well as a sufficient basis for the relief sought. *Id.*  Rovio alleges claims for federal copyright infringement under 17 U.S.C. § 501(a); trademark counterfeiting under sections 32, 34, and 35 of the Lanham Act; infringement of registered trademarks under section 32(a) of the Lanham Act; and false designation of origin, passing off, and unfair competition under section 43(a) of the Lanham Act.  Docket no. 1 at 17–23.

First, the essential elements for a claim of copyright infringement under 17 U.S.C. § 501 are: (1) the ownership of a valid copyright in the work, and (2) copying by the defendant. *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000). The second element, "copying," is shorthand for the infringing of any of the copyright holder's exclusive rights, as defined in section 106 of the Copyright Act. *See Rovio Entm't Ltd. v. Royal*

8

*Plush Toys, Inc.*, Civ. Ac. No. 12-5543 SBA, 2012 WL 5936214, at *6 (N.D. Cal. Nov. 27, 2012) (citing *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir.1989)).  Distribution of a copied work may suffice to fulfill this second element.  *See, e.g.*, *Novelty, Inc. v. Jacob's Paradise, Inc.*, Civ. Ac. No. 1:08CV0079SEBJMS, 2009 WL 3531184, at *4 (S.D. Ind. Oct. 26, 2009) ("Regardless of [defendant's] status as a manufacturer, it is an infringer under the Copyright Act if it merely distributed copies of [plaintiff's] copyrighted designs that were manufactured by a third party.); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077, 1085 (D. Md. 1995) ("The Act does not require extensive copying on the part of a defendant before a plaintiff can bring a claim for infringement. Rather, the Act ensures an owner the exclusive right to distribute or limit the distribution of its product.").

Rovio has alleged that it owns multiple copyrights related to the Angry Birds franchise. *See* docket no. 187-1 at 20; docket no. 1 at 13 ("Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights."). Furthermore, Rovio has alleged that the GW Defendants engaged in "copying" by knowingly and wilfully importing, distributing, displaying, and offering for sale works that are substantially similar to the copyrighted works.  *Id.*  Thus, the Court concludes that Rovio's Complaint pleads facts sufficient to support a claim for copyright infringement against the GW Defendants.

Second, to establish a claim for infringement or counterfeiting of trademarks under the Lanham Act, a plaintiff must show: (1) ownership in a legally protectable mark, and (2) infringement by demonstrating a likelihood of confusion.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–236.  Courts in the Fifth Circuit have generally recognized that when there is a counterfeit mark, likelihood of confusion is clear.  *See, e.g.*, *Microsoft Corp. v. Wholesale Club, Inc.*, 129 F.Supp.2d 995, 1007 n.11 (S.D. Tex. 2000).

9

Here, Rovio's Complaint alleges it is the owner of many registered trademarks. Docket no. 1 at 13 ("Plaintiff is the owner of registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, and U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43. . . .). The Complaint also alleges that the GW Defendants have willfully imported, marketed, promoted, and sold several infringing products bearing these marks and that this is likely to cause confusion among the general purchasing public. *Id.* at 19. Furthermore, Rovio alleges that the GW Defendants acted as a distributer and supplier and provided infringing products to several of the other defendants in this case. *Id.* Thus, Rovio's Complaint pleads sufficient facts to support its claims under the Lanham Act.

C. Damages

Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Courts often conduct a hearing to determine the amount of damages warranted. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). However, a hearing to decide the amount of damages is unnecessary when the amount can be determined "with certainty by reference to the pleadings and supporting documents." *Id.* Rovio's Complaint seeks an award of statutory damages for $2 million per counterfeit mark and an award of each Defendant's profits, statutory damages pursuant to 17 U.S.C. § 504, an unspecified amount of damages under 15 U.S.C. § 1125(a), and exemplary damages in an amount to be determined by the Court. Docket no. 1 at 23–25. The motion for default judgment seeks $1,275,000 in damages from the GW Defendants. Docket no. 187-1 at

35.   This amount includes $150,000 in damages for willful copyright infringement and $1,125,000 in damages for willful trademark infringement and counterfeiting.  *Id.*

  *1. Copyright damages*

Section 504(c) of the Copyright Act allows plaintiffs to either elect either statutory damages or actual damages for copyright infringement.  17 U.S.C. § 504(c)(1) (2012).  A court may award statutory damages in the amount of "not less than $750 or more than $30,000 as the court considers just" with respect to any one work.  *Id.*  When a court finds willful infringement, it "in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00."  *Id.* § 504(c)(2).  Courts in the Fifth Circuit in similar cases have previously awarded statutory damages in the amount of $25,000 per copyright work infringed for willful violations.  *See, e.g.*, *Rovio Entertainment Ltd. v. The Kim Group, Inc., et al.*, Civ. Ac. No. 4:13-cv-03512, docket no. 123 (S.D. Tex. July 28, 2015).

In this case, Rovio has shown that the GW Defendants willfully infringed six works: "the Red Bird Work, the Green Bird Work, the Yellow, Blue, White & Black Bird Work, the Big Red Bird Work, the Green Pig Work and the 3-D Birds Work."  It requests $25,000 in statutory damages per copyright work infringed, or in the case of these defendants, $150,000.  This request is just and proportionate to the alleged violations.  The Court accordingly awards Rovio $150,000 in statutory copyright damages against the GW Defendants.

  *2. Trademark damages*

The Lanham Act provides that at any time before final judgment is issued, a trademark owner may elect to recover an award of statutory damages for the use of a counterfeit mark in connection with a sale of goods in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the

11

court considers just," or if the violation is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c) (2012).  Courts in this circuit have previously awarded $25,000 per trademark per type of product in similar cases.  *See, e.g.*, *Rovio Entertainment Ltd v. AM Wholesale Inc., et al*, Civ. Ac. No. 3:13-CV-4719-G, docket no. 15 (N.D. Tex. June 16, 2014).

Rovio has successfully stated a claim that the GW Defendants sold and distributed infringing goods featuring eight different marks on various products, for a total of forty-four violations.[2]  It seeks $25,000 per violation, which is a just and appropriate request that is proportionate to the GW Defendants alleged violations.  The Court accordingly awards Rovio $1,100,000 in trademark and counterfeiting damages, for a total of $1,250,000 in damages.

## II.    The Castro Defendants

The Castro Defendants—Dial Tone Cellular, LLC and Rene Fidel Castro d/b/a JC, Inc.— and Rovio reached a settlement during mediation with Judge Primomo.  Docket no. 199 at 2.  As such, the Court will dismiss this portion of Rovio's motion as moot.

## III.    The Orozco Defendants

A. Jurisdiction

### 1. Personal Jurisdiction

Macrina Lugunas Orozco and Martin Z. Orozco are individuals who are domiciled in the

---

[2] Rovio's motion states that there are forty-nine violations, and at $25,000, requests a total of $1,125,000 in damages.  But 49 violations at $25,000 would result in $1,225,000 in damages.  Additionally, Rovio states that the infringing marks were as follows: "the Angry Birds Mark on at least six (6) different types of Infringing Products, the Red Bird Mark on at least fourteen (14) different types of Infringing Products, the Blue Bird Mark on at least six (6) different types of Infringing Products, the Yellow Bird Mark on at least seven (7) different types of Infringing Products, the White Bird mark on at least five (5) different types of Infringing Products, the Green Bird Mark on at least two (2) different types of Infringing Products, the Black Bird Mark on at least one (1) type of Infringing Product, and the Green Pig Mark on at least one (1) type of Infringing Product . . ."  Docket no. 187-1 at 31.  The sum of 6, 14, 6, 7, 5, 2, 1, and 1 is 42, not 49.  As a result of the discrepancy, the Court consulted the chart provided by Rovio in Exhibit 2, which shows a total of 44 violations in the section of the chart for trademarks.  Docket 187-2 at 23–28.

state of Texas.  *See* docket no. 1 at 8 (stating that the last confirmed address of both defendants is 510 Harding Boulevard, San Antonio, Texas, 78221); docket no. 80 at 1 (stating that the private process server served the Orozco Defendants personally at their home, the Harding Boulevard address).  As a result, this Court has personal jurisdiction over these defendants.

>  *2. Subject Matter Jurisdiction*

As explained above, this Court has subject matter jurisdiction over this case because Rovio has asserted several federal causes of action, and thus there exists federal question jurisdiction.  *See* docket 1 at 2.

B. Liability

Next, the Court considers whether Rovio has stated a valid cause of action against the Orozco Defendants.  Since the Orozco Defendants failed to respond, all facts in the Complaint are taken as true.  First, as to Rovio's claim for copyright infringement, it has alleged that it owns multiple copyrights related to the Angry Birds franchise.  *See* docket no. 187-1 at 20; docket no. 1 at 13 ("Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights.").  Additionally, Rovio has alleged that the Orozco Defendants engaged in "copying" by knowingly offering for sale works that are substantially similar to the copyrighted works, specifically the Red Bird Work, including balloons, hats, shirts, and other products at their business located in the Mission Open Air Flea Market in San Antonio.  *Id.*; *see also* docket no. 187-1 at 13.  Thus, the Court concludes that Rovio's Complaint pleads facts sufficient to support a claim for copyright infringement against the Orozco Defendants.

Second, as to Rovio's claim for trademark infringement under the Lanham Act, Rovio's Complaint alleges it is the owner of many registered trademarks.  Docket no. 1 at 13 ("Plaintiff is

the owner of registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, and U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43. . . .). The Complaint also alleges that the Orozco Defendants have sold several infringing products bearing these marks and that this is likely to cause confusion among the general purchasing public. *Id.* at 19.  Thus, Rovio's Complaint pleads sufficient facts to support its claims under the Lanham Act against these two defendants.

C. Damages

    *1.  Copyright damages*

    Rovio has successfully alleged that the Orozco Defendants willfully infringed one work, the Red Bird Work.  Docket no. 187-1 at 34.  It requests $25,000 in statutory damages per copyright work infringed, an amount the Court determines to be just.  The Court accordingly awards Rovio $25,000 in statutory copyright damages against the Orozco Defendants.

    *2.  Trademark damages*

    Rovio has shown that the Orozco Defendants sold and distributed infringing goods featuring the Angry Birds Mark.  Docket no. 187-1 at 31.  Thus, the Court awards Rovio $25,000 in trademark infringement damages, for a total of $50,000 assessed against the Orozco Defendants.

**IV.   Jose Garcia**

A. Jurisdiction

    *1. Personal Jurisdiction*

    Jose Garcia is an individual domiciled in the state of Texas.  *See* docket no. 1 at 8 (stating

that his last confirmed address was 301 Stace, San Antonio, Texas, 78204).  As such, this Court has personal jurisdiction over him.

### 2. Subject Matter Jurisdiction

As previously explained, since Rovio has asserted federal causes of action in its Complaint, this Court has subject matter jurisdiction.  *See* docket 1 at 2.

### B. Liability

Next, the Court considers whether Rovio has stated a valid cause of action against Garcia. Since Garcia failed to answer or otherwise respond, all facts in the Complaint are taken as true. First, as to Rovio's claim for copyright infringement, it has alleged that it owns several copyrights related to the Angry Birds franchise.  *See* docket no. 187-1 at 20; docket no. 1 at 13 ("Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights.").  Furthermore, Rovio has alleged that Garcia engaged in "copying" by knowingly offering for sale twenty-two infringing works that are substantially similar to the copyrighted works at his business located in a flea market in San Antonio.  *Id.*; *see also* docket no. 187-1 at 13.  Thus, the Court concludes that Rovio's Complaint pleads facts sufficient to support a claim for copyright infringement against Garcia.

Second, as to Rovio's claim for trademark infringement, the Complaint alleges that Rovio is the owner of many registered trademarks.  Docket no. 1 at 13 ("Plaintiff is the owner of registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, and U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43. . . .).  The

15

Complaint also alleges that Garcia has offered for sale several infringing products bearing these marks and that this is likely to cause confusion among the general purchasing public. *Id.* at 19. Thus, Rovio's Complaint pleads sufficient facts to support its claims under the Lanham Act against this defendant.

C. Damages

    *1. Copyright damages*

Rovio has shown that Garcia willfully infringed one work, the Red Bird Work, and requests $25,000 in statutory damages. Docket no. 187-1 at 34. The Court accordingly awards Rovio $25,000 in statutory copyright damages against Garcia.

    *2. Trademark damages*

Rovio has alleged that Garcia sold and distributed infringing goods featuring the Yellow Bird Mark. Docket no. 187-1 at 31. Thus, the Court awards Rovio $25,000 in trademark infringement damages, for a total of $50,000 assessed against Garcia.

    **V.    Yazmin Reyes**

A. Jurisdiction

    *1. Personal Jurisdiction*

Yazmin Reyes is an individual domiciled in the state of Texas. *See* docket no. 1 at 8 (stating that her last confirmed address was 11211 Applewhite Road, #4, San Antonio, Texas, 78244); docket no. 76 at 1 (reflecting that she was personally served by the process server at the Applewhite Road address). This Court has personal jurisdiction over Reyes.

    *2. Subject Matter Jurisdiction*

As stated previously, this Court has federal question jurisdiction over this case because Rovio has asserted causes of action that arise under federal law. *See* docket 1 at 2.

B. Liability

The Court now considers whether Rovio has stated a valid cause of action against Reyes. Since she failed to answer or otherwise respond, all facts in the Complaint are taken as true. To begin, as to Rovio's claim for copyright infringement, it has alleged that it owns multiple copyrights related to the Angry Birds franchise. *See* docket no. 187-1 at 20; docket no. 1 at 13 ("Plaintiff owns the following relevant certificates of registration: VA1794919, VA1769078, VA1769080, VA1776992, VA1776995, VA1777195, VA1778702, VA1778703, and VA1778705 as well as numerous common law copyrights."). Furthermore, Rovio has alleged that Reyes engaged in "copying" by knowingly offering for sale several infringing works that are substantially similar to the copyrighted works at her business located at a flea market in San Antonio. *Id.*; *see also* docket no. 187-1 at 13. As such, the Court concludes that Rovio's Complaint pleads facts sufficient to support a claim for copyright infringement against Reyes.

Second, as to Rovio's claim for trademark infringement, the Complaint alleges that Rovio is the owner of many registered trademarks. Docket no. 1 at 13 ("Plaintiff is the owner of registered trademarks, including but not limited to: U.S. Trademark Registration Nos. 4,200,545, 4,148,716, and 3,976,576 for "ANGRY BIRDS" for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43, and U.S. Trademark Registration Nos. 4,252,003, 4,145,113 and 3,988,064 for a wide variety of goods in Classes 3, 9, 14, 16, 18, 20, 21, 24, 25, 27, 28, 29, 30, 32, 33, 34, 35, 36, 38, 41 and 43. . . .). The Complaint also alleges that Reyes has offered for sale several infringing products bearing these marks and that this is likely to cause confusion among the general purchasing public. *Id.* at 19. As a result, Rovio's Complaint pleads sufficient facts to support its claims under the Lanham Act against Reyes.

C. Damages

   *1. Copyright damages*

17

Rovio has alleged that Reyes willfully infringed one work, the Red Bird Work, and requests $25,000 in statutory damages.  Docket no. 187-1 at 34.  The Court finds this amount to be proportional to the violation and accordingly awards Rovio $25,000 in statutory copyright damages against Reyes.

### 2.  *Trademark damages*

Rovio has successfully shown that Reyes sold and distributed infringing goods featuring the Angry Birds Mark.  Docket no. 187-1 at 32.  Thus, the Court awards Rovio $25,000 in trademark infringement damages, for a total of $50,000 assessed against Reyes.

## VI.   Injunctive Relief

Rovio also seeks a permanent injunction prohibiting the defaulting Defendants, their employees, agents, officers, successors, and assigns, from engaging in any of the following activity:

> a) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;
>
> b) directly or indirectly infringing in any manner any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks or Copyright Works;
>
> c) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works to identify any goods or services not authorized by Rovio;
>
> d) using any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

e) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff;

f) engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

g) engaging in any other actions that constitute unfair competition with Plaintiff;

h) engaging in any other act in derogation of Plaintiff's rights;

i) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

j) effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

k) instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (k) above.

Docket no. 1 at 24; docket no. 187-4 at 3–4.

15 U.S.C. § 1116(a) provides that a court has the power to grant a permanent injunction for a violation of the Lanham Act. 15 U.S.C. § 116(a) (2012). Additionally, 17 U.S.C. § 502

19

states that a district court has authority to grant injunctive relief to prevent further violations of the Copyright Act.  17 U.S.C. § 502 (2012).  A permanent injunction is an appropriate remedy if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest.  *See Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (citations omitted).  In short, in Copyright Act and Lanham Act cases, an injunction is appropriate if liability has been established and if there is a substantial likelihood of further infringement of Plaintiffs' copyrights.  *Fermata Int'l Melodies, Inc. v. Champions Golf Club Inc.*, 712 F.Supp. 1257, 1262 (S.D. Tex. 1989), *aff'd*, 915 F.2d 1567 (5th Cir. 1990); *see also Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir. 1984) (explaining that a past infringement and a substantial likelihood of future infringements normally entitles the copyright holder to a permanent injunction against the infringer pursuant to 17 U.S.C. § 502(a)).

Courts in this circuit have acknowledged that default against a defendant is tantamount to actual success on the merits. *See, e.g., Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006).  Thus, the first prong has been satisfied in this case.  *Id.*; *see also United State 'ex rel' M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  As for the second prong, Rovio has no other adequate remedy at law because it is unlikely that monetary damages will prevent future infringing activity by these Defendants. In fact, despite the initiation of this lawsuit and a federal criminal investigation, several of the defaulting Defendants have continued to traffic in goods that encroach on Rovio's intellectual property rights.  *See, e.g., W.B. Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP–05–CA–267– PRM, 2005 WL 2662553, at *3 (W.D. Tex. Oct. 18, 2005).  Additionally, there has been no

showing that requiring Defendants to restrain from future infringement will cause them harm, and any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Rovio's business if the injunction is not granted.  Finally, an injunction would serve the public interest by promoting compliance with intellectual property law. *See Arista Records, Inc. v. Kabani*, No. 3:03-CV-1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004).  As a result, the Court will grant Rovio's request for a permanent injunction barring these specific Defendants from engaging in any further infringing activity.

## CONCLUSION

Plaintiff's motion for default judgment (docket no. 7) is GRANTED as to the GW Defendants, Orozco Defendants, Defendant Garcia, and Defendant Reyes, and DISMISSED AS MOOT as to Defendants Dial Tone Cellular, LLC and Rene Fidel Castro d/b/a JC, Inc.  Rovio is awarded $1,250,000 in damages against the GW Defendants, $50,000 in damages against the Orozco Defendants, $50,000 in damages against Garcia, and $50,000 in damages against Reyes. The Court will also grant Rovio's request for a permanent injunction barring the defaulting Defendants from engaging in any further activity that infringes on Rovio's trademarks and copyrights in the Angry Birds franchise.

Judgment shall issue separately according to Rule 58.  Rovio is awarded its costs of court and shall file a Bill of Costs pursuant to the Local Rules within fourteen days of the entry of the Judgment.

Furthermore, Rovio is instructed to confer with all remaining defendants and file a proposed scheduling order for further proceedings in this case by August 16, 2016.

It is so ORDERED.

SIGNED this 2nd day of August, 2016.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE